case of the afternoon four zero nine zero seven nine four people of the state of Illinois versus John Bonetti for the appellate Mr. Doherty for the afternoon Mr. McNeil you may proceed. May it please the court, counsel, Dennis Doherty on behalf of John Bonetti. It is my extreme honor to be before the fourth district appellate court and I'm grateful for the opportunity to address this honorable court. This appeal addresses only the reasonable grounds or probable cause to stop Mr. Bonetti in a traffic stop. So we will begin with the Champaign student patrol. Around 1 50 a.m on May 1 2009 a student patrol officer flagged down a squad car driven by University of Illinois police officer Hawk and the record reflects that the student patrol officer told officer Hawk that quote that would be a good car to look at. He also the patrol officer said that Mr. Bonetti didn't know his name of course and he's the driver of this car was shouting with a couple of friends that he may have wanted to urinate in the parking lot or the car was impaired. That's the information that was told officer Hawk and officer Hawk then proceeded to radar lock onto Bonetti's car and he started the film rolling. This entire event from that point on was videotaped with the tape in the police car. That tape has been transferred and filed with this court and it is an exhibit in this appeal. So the issue is at this point is the fourth amendment involved? Yes. Has there been a fourth amendment violation? No. No because according to case law including a decision the people versus Schaefer a decision from this court authored by wheat decision Tucker Estolte a drunken driving tip is a matter of urgency and the Tucker case says that's akin to the moving automobile exception. Especially where a tipster is known he's accountable and he's relating a first-hand information personal observations. It would be irresponsible for the police to ignore such information and these folks are more dangerous than someone with a gun which was the language again from Schaefer. So now Officer Hawk is following Mr. Bonetti and it's all filmed. It's downtown Champaign a little before two in the morning. I think it's common knowledge that that is a campus-like setting in that town and you can see in the film there's students wandering around and there's lots of students at any hour in downtown Champaign. So Officer Hawk follows Bonetti it's all taped for one block the first block. This is after hearing this stuff from the student patrol officer. No weaving, no slow driving, no infractions whatsoever. Stops, he turns. Officer Hawk follows Bonetti again. Drives six blocks, six blocks right behind nothing. No weaving to the side, no slow driving, nothing. Not any evidence of impairment, no evidence certainly of traffic violations. He stops, stop sign, turns right. The officer follows him another two blocks. Bonetti turns left and the mars lights go on. There are obvious distinctions between the drunken driving cases with tipsters, deleting cases, those cases I might state here. In the weed case for example, we have reports of the guy running cars off the road, driving like a quote maniac. He was driving on the wrong side of the road. In the Tucker case, running other vehicles off the road. Stolte ran a car off the road and in the Schaefer case, a Wendy's employee. So the guy was causing absolute disturbance in the drive-thru window and he was intoxicated and of course and it was noted there the drive-thru window, the face-to-face. So the question, the first question is, is the student-controlled tip here enough to arrest or pull over Bonetti? And he did. He said, well that's a good car to look at. He was going to take a pee but he didn't and he was shouting and he might be impaired. That's all. That's all. All of us told the officer. We don't know if it's close observation or from a block away but that's what the officer said. Is that enough to stop the car? Not the reports like in weed where the guy's running everybody off the road and on the wrong side of the road. But didn't the officer testify that he did not pull over the car? Oh exactly. That's not enough. Exactly, Your Honor. That's not enough. The student-controlled tip is not enough. At least he thought it wasn't enough. He definitely thought it wasn't enough because he didn't pull over on him. But it's enough to take a look at the car and he locked in like a heat-seeking missile and he's following this guy for nine miles, I mean nine blocks. And you're running the mill drunk. It's about two in the morning. I suppose his last call at bars. A midnight patrol officer, if he thinks he's got a drunk on his hands, probably doesn't have to take action based on that tip. Start the pimp rolling and you're usually going to get weaving, driving too slow, stopped at a green light, whatever you get normally if a guy's drunk. But he doesn't get anything here. He gets nothing. So he comes up with, and this is what he says he stopped the car for, failure to yield to pedestrians. And the way this occurred here, Your Honor, is it has to be a catch-all in downtown Champaign at any hour. And I'll describe how he says he thought this violation occurred. But now we have the Fourth Amendment violation. Because Mr. Bonetti did not violate the Pedestrians Right-of-Way at Crosswalks statute and he did not commit any violation. But that is for this court to decide because the review is de novo. Now the statute states Pedestrians right-of-way at crosswalks, when traffic controls are not in place, are not in operation, the driver of the vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or when the pedestrian is approaching so closely from the video. Again, which is filed with this court at the digital reading. I was allowed to view it in the clerk's office here after it was transferred from the trial. I was not the trial attorney here. The digital reading is 52 colon 55 in the upper left-hand corner. So I think there's other films on it earlier, you know, when it runs. But anyway, that was the reading. You can see in the video the officer is following Bonetti and he stops at a stop sign. In the right-hand corner of the images are four pedestrians walking, walking on the adjacent sidewalk. Now the officers here at the stop sign of Bonetti, you can't see the sidewalk because of the limited vision of the camera at that point. Bonetti has a turn signal, properly turns right. Then in the images you see the four pedestrians crossing the crosswalk at that point. You don't see them on the sidewalk. You don't see where they stepped into the crosswalk. But officer testified that he flagged them over. They're on the sidewalk. He told them to go. He turns right. He follows Bonetti about one or two more blocks and then he turns left and then he puts the lights on. I think that he was running a radio check on Bonetti and he might have realized that Bonetti was almost home. At any rate, he pulls him over and says he failed to yield. It was a violation, a violation 511-1002. He failed to yield to the pedestrians that were on the sidewalk. And this is a testimony from officer Hawk. Bonetti's parked. He's facing west. The pedestrians are standing on a sidewalk. They're also facing west. So he's turning right, which I would be traveling north, I believe, or whatever direction. He's turning right. They're standing on a sidewalk while Bonetti's parked there. They were, quote, on the sidewalk, close to the crosswalk. When the defendant began his right turn. Record page 13. Mr. Bonetti began to turn right. Record page 30. They began to step into the crosswalk as he began his right turn. Record page 30. As he turned right, they halted their forward movement. Record page 15. So there's nobody within the crosswalk. But didn't the police officer testify that if they hadn't stopped, he would have hit them? I thought that was his testimony. Well, I respectfully submit, and this is a de novo review, that that can't possibly be reconciled with other aspects of the testimony here. But was that the officer's testimony? The question from Justice Polk is, was that the officer's testimony? Yes, but on cross-examination, he also said nobody was brushed back, nobody yelled, nobody waved. This is not on the film, but again, I suppose if they stepped off the sidewalk at the exact time, simultaneous, and he begins to turn right, that if they would have kept going, there might have been a collision with the car. The question has to be, was he supposed to stop in the middle of turning right because there's people on the sidewalk that have began to step into the crosswalk? I don't see that as a reasonable traffic move. But this says, you shall yield. It doesn't say halt, and that was what I put in there. But you're to yield the right-of-way. In other words, if you're turning right, and a pedestrian's in the crosswalk trying to cross the street, the car is to yield to the pedestrian. In other words, let the pedestrian go across, and then the car completes its turn. Absolutely, Your Honor, but there's nobody within the crosswalk. But the officer testified they were in the crosswalk. You can't tell from the video. Respectfully state, Your Honor, and that's why we quote it, they were on the sidewalk when he began his right turn. That's record page 13. That's a quote. They were standing on a sidewalk when he began to turn right. They began to step into the crosswalk as he began a right turn. That's record page 30. As he turned right, they halted their forward movement. So it was simultaneous. He's turning right, they begin, and they halt. I don't believe that that violates the statute, which says you must yield to someone within the crosswalk. Now, counsel, you agree, though, that the state doesn't have to show that there was a violation of the statute. The state only needs to show for purposes of this particular hearing at the time that the officer had probably cause to believe the violation occurred. Well, I don't think the police officer determines whether it was a violation of law. The trial court makes that determination. That would be a conclusion on the part of the officers, and of course, it's a de novo review. It's for this court to determine that. But the police officer thought that he had violated this statute. I believe the facts and the language of the statute makes it clear that he did not violate that statute. Well, my question is, if the police officer thought he violated that statute, don't you lose? Because that's really all the state needs to show. Well, I think it would have to be reasonable. And if there's nobody within the crosswalk, when he's turning right, the interpretation of the officer is that he has to stop. And the red case says his subjective thoughts are not controlling the United States versus when. But I don't think, if the police officer thinks that you can't go through a yellow light and are charged with disobeying a stoplight, if that's not the law, I don't think the state wins because the police could run around pulling people over or charging people with things that are not crime. And if Mr. Benetti did not commit a crime, did not violate the statute as a matter of law, the stop is unlawful. However, considering rent and the subjectiveness of the police officer is not relevant, there is something on this video that illustrates that Officer Hawke is not sincere in his interpretation of this man's actions. At 5200 on this tape, and that is again the same tape where at 5255 we have people walking on the sidewalk, Benetti turning right, when he turns right there's nobody in the crosswalk in front of him. So these folks are either still on the sidewalk or just begin to step off the sidewalk. He's already turning right. You can't see him turning right and there are no people in front of him as he's turning right. But didn't the officer testify though that he had to go around the people in the crosswalk to complete his turn? No, the officer said he flagged them on and you can see the four people crossing and then the officer turned. When you say he flagged them on? He told them to go. He who? Officer Hawke, thank you very much. That's when Officer Hawke is making his turn. He let the pedestrians go. Well he instructed them to go across. To complete their crossings. Well they had halted, it's not on the tape. Well they were on the street at that point in time. Just stepped off the sidewalk. I don't think that's his testimony. I think his testimony is that the car had to actually go around the pedestrians who were in the crosswalk. Meaning the defendant's car? Yes, the defendant's is what I meant. On page 30, they were standing on a sidewalk when the defendant began his right turn. Record page 13. Mr. Benetti began to turn right. Record page 30. They began to step into the crosswalk as he began his right turn. Record page 30. As the defendant turned right, they halted their forward movement. So it was simultaneously, I believe, based on his testimony on cross-examination. We might have made that allusion on direct, but the greatest engine for truth, that's the record of the testimony of cross-examination. However, at 52-00, we're now two blocks down the road before this incident, he claims that he didn't yield the right-of-way. There's a stop sign. Benetti stops the cop and the police officer is behind him. Stop sign. Two people cross right in front of Benetti. He lets him go. They're across the street on the crosswalk. Two more people cross on a crosswalk. He lets him go. Two more people start to walk, stop. They are in the crosswalk, but like about one or two feet from the corner, Benetti takes off while they're standing there. Now, according to the interpretation that Officer Hawke has, Benetti was required to turn off his engine, draw an anchor, stop, and he could not cross if those people were there. They had to go first. But they stopped and he went. There was nothing unreasonable about that. If Officer Hawke thought that was a crime, he could have stopped him there and he didn't. He also could have written him up for that and he was running out of things to pull the guy over for. And that's why he came up with this. He expected more because he had a student patrol service guy in front of him. My great pleasure to be a part of this story. You'll have time to let me know about it. You may proceed. May it please the Court. Counsel. Like Justice Pope said, there was testimony by the police officer that not only were the students forced to stop, but also that they had began crossing into the crosswalk before the defendant started his right turn. Does the video corroborate that? The video doesn't. It's a fixed video on the dashboard. The video corroborates that there is a group of people waiting to cross the crosswalk. The video doesn't show when they start just because of the angle. It doesn't refute that either. So again, looking at the language of need be to so yield. I think that language right there shows that by yielding the right of way, that means that the pedestrians have the right to go first. And here, they clearly, clearly the defendant wanted to go first. And again, it's well settled that a traffic stop supported by probable cause to believe that the defendant has violated traffic laws is valid, regardless of whether the officer's real purpose is to discover evidence of other crimes. And this analysis is properly conducted from the perspective of a reasonable officer at the moment in time and not in hindsight. So saying that it even was simultaneous, they step into the crosswalk at the exact time the defendant starts his right turn, the pedestrians still have the right of way at that point. And it would be a clear violation of 1002A. So the defendant should have stopped the vehicle? Well, I guess he should have checked and see if anybody was crossing the crosswalk first. And if there was, if there was enough time for pedestrians to cross the street, then there was enough time for him to wait on them to cross the street before another car comes. What if one of the pedestrians had like, waved the driver, the defendant, or the defendant in this case, like, go ahead, complete your turn. Would that still be a violation of the statute because the driver would not have yielded? I think so. But there isn't, again, there's no evidence whatsoever of that happening here. As for the student patrol officer, again, it's, there was testimony that the police officer treated that tip like a citizen complaint. It would be at least as reliable, if not more reliable, than a person on a highway calling from their cell phone saying that a person swerving in front of them, they suspect them to be a drunk driver in this court in Shaffer. Didn't the officer say that the tip from this student patrol officer had no bearing on his stopping the defendant's vehicle? Right, this, it was just... Does that seem credible to you, in as much as the officer had followed this vehicle for, what was it, six, eight blocks? Six blocks, that's... Seeing absolutely nothing to corroborate that there was an impaired driver? Again... My question is, though, don't you think that kind of hurts the with me stopping his vehicle was based solely upon this so-called failure to yield? Again, his subjective, his subjective reasons for pulling him over aren't, shouldn't be in question. If there, if it's, if there's a probable cause that he, that the defendant committed a traffic violation, it's... I wasn't, my question was, does that challenge his credibility, asking us to believe such a statement that the tip had nothing to do with his pulling his vehicle over? I'm not, I don't remember if he, if he exactly said what, what you're trying to say, but I think the reason he, the student patrol officer, that content was even in the testimony is to show his reason for following defendant in the first place, as it, he got a reliable tip from patrol officer that somebody might be intoxicated. And six or eight blocks, that sounds like a lot, but that's, that's still less than, less than a mile. So when you think about it in the terms of that, it's not too far to follow someone, especially on a tip that they might be intoxicated. In this court, Schaffer recognized the imminent danger that a drunk driver poses and, and found that less corroboration is needed for an investigatory stop from a tip that concerns a drunk driver. There was also testimony that the, from the police officer, that defendant seemed to not notice when, not even notice the pedestrians when he was turning, but that's, if the, and there was testimony that if the pedestrians hadn't stopped, they would, they would have either ran into defendant's car or defendant would have ran into them, one of the two. But either way, it was a clear violation of, of section 1002A and the officer had reasonable grounds to stop him. And if there aren't any more questions, I'll rely on my brief. We have none, thank you. Any rebuttal, Mr. Dougherty? At the record page 13, your honors, the officer said the folks were standing on the sidewalk. Record page 13, they were on the sidewalk, pedestrians. Record page 13, he, Benetti, that he didn't quickly whip his car around in front of people. Record page 14, pedestrians were stepping into the crosswalk before Mr. Benetti actually began his turn. Record page 14, when the traffic cleared, the pedestrians were into the crosswalk and then he turned. He had to go around them. That is at record page 14. They were walking forward until Mr. Benetti pulled out around them. So didn't that, didn't what you just quoted to us say, his testimony was that they had stepped into the crosswalk before he began to make his turn? No. I thought you did. Could you just read it? Well, he said that at 14. He said, okay, indeed, at page 14. And this is direct examination. Okay. All right. Can you read that again? Absolutely. I thought you just read it. No, no, absolutely. Pedestrians were stepping into the crosswalk before the defendant actually began his turn. That is direct examination. When the traffic cleared, and this is on the video again, traffic cleared being a car is zooming down First Street going, it's a one-way street, westbound apparently. That thing goes, that car goes, he turns right. We see the pedestrians walking up. We lose sight of them on the sidewalk. Benetti turns right. They then walk across the crosswalk, four of them. When the traffic cleared, that's that car going this way, the pedestrians were into the crosswalk and then he turned. Direct. That's direct. Now the attorney cross-examines him. And let me go to my abstract, excuse me. So this is it. On cross. The attorney is trying to pin him down. It's not on the tape. It's not on the tape. What, what, what, what? You observe the kind of failure you yield to pedestrians. They specifically did not wave him on. They were stepping into the crosswalk as he began his turn. They had to stop walking or else they would walk into his car. That's the record, page 30. Not that his car would hit them. So that has to mean that when he turned right, there was nobody within the crosswalk, in his area that he was traveling on. They are stepping off as he's beginning the right turn. Does a motorist, should he, must he as a matter of law, slam on the brakes? This is a major artery, First Street. There's about four lanes and there's no traffic signal for the cars going westbound. This is a stop sign. Daniel Street is leading up to this major artery, First Street. If he begins to turn right and sees some people, four people, stepping off, and again, there's no notice, especially in this setting here, in this campus setting, that four people, students, their student age, are going to be moving off the corner. They might be talking, smoking, chatting, and he's going to turn right. All of a sudden he sees four people who have begun to take one step. How in the world can he throw the car in the park with him already on First Street and tell these people to move on? And you'll see the speed of that car on First and Five. So, I had phrased it such that this is very peculiar and the cross-examination has to be considered, but at best, it's simultaneous. Thank you, counsel. Thank you very much, Your Honor.